IT IS HEREBY ADJUDGED and DECREED that the below
described is SO ORDERED.

Dated: May 19, 2016.

_____
CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE
_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO. 15-50148-CAG |
| FELIX LANDIN, IV,  Debtor. | § § | CHAPTER 7 |

| | | |
|---|---|---|
| JUDY A. ROBBINS, UNITED STATES TRUSTEE,  Plaintiff, | § § § § | |
| v. | § § § | ADVERSARY NO. 15-05044-CAG |
| FELIX LANDIN, IV,  Defendant. | § § § | |

## MEMORANDUM OPINION GRANTING, IN PART, AND DENYING, IN PART, UNITED STATES TRUSTEE'S OBJECTION TO DISCHARGE OF FELIX LANDIN, IV (ECF NO. 1)

1

Came on to be considered, the above captioned adversary proceeding, and in particular, Judy A. Robbins, the United States Trustee for Region 7 which includes the Western District of Texas's (the "U.S. Trustee"), Complaint Objecting to the Discharge of Felix Landin, IV (ECF No. 1)[1] and Felix Landin, IV's ("Defendant") Answer thereto (ECF No. 4). The Court held an evidentiary trial on this matter beginning January 25, 2016, continuing onto January 26, 2016, and concluding January 27, 2016. After the conclusion of trial, the Court took this matter under advisement. After considering the evidence at trial; testimony of witnesses; and arguments of counsel, the Court finds that Defendant's discharge should be denied for the reasons stated herein.

## BACKGROUND

For many years, Defendant operated tax preparation stores. Joint Pretrial Order at ¶ 7.[2] On August 23, 2012, Defendant entered into a Conversion Agreement with H&R Block Tax Services, LLC ("H&R Block"), pursuant to which, among other things, H&R Block paid Defendant more than $730,000 to purchase his client records and materials, and Defendant converted his tax business in Texas to a franchise of H&R Block. *Id.* at ¶ 8. Defendant entered into a Franchise License Agreement ("FLA") with H&R Block that same day which, among other things, established terms for the operation of Defendant's franchised business. *Id.* During 2013, Defendant received deposits of more than $1.4 million dollars from H&R Block. *Id.* at ¶ 13. In 2014, Defendant received deposits of more than $800,000 dollars from H&R Block. *Id.*

In the FLA, Defendant agreed that, in the event of termination of the FLA due to a default on his part, he would pay to H&R Block all damages, costs, and expenses, including

---

[1] Unless otherwise specified, all ECF references herein are to Adv. Case No. 15-05044.
[2] The parties filed a Joint Pretrial Order (ECF No. 7) on November 20, 2015 ("Joint Pretrial Order"). In the Joint Pretrial Order, parties stipulated to certain facts adopted herein.

reasonable attorneys' fees, incurred by H&R Block as a result of the default. *Id.* at ¶ 10. He also agreed not to compete for two years within 25 miles of the authorized territories. *Id.* On February 21, 2014, H&R Block sent a letter to Defendant alleging various breaches and a 15-day opportunity to cure them. *Id.* at ¶ 11. Alleging he did not cure the breaches, H&R Block terminated its agreement with Defendant on March 8, 2014, although he continued to process tax returns through April 15, 2014. *Id.* On December 30, 2014, H&R Block sued Defendant in Federal District Court in St. Louis, Missouri. *Id.* at ¶ 12. H&R Block sought, among other things, an injunction against Defendant continuing to provide tax preparation services and money damages. *Id.*

On January 14, 2015, Defendant commenced his voluntary chapter 7 case, Case No. 15-50148. On February 9, 2015, Defendant filed his Schedules and Statement of Financial Affairs in Case No. 15-50148 ("Original Schedules and Statement of Financial Affairs"). UST[3] 2. On March 9, 2015, Defendant filed his First Amended Schedules and Statement of Financial Affairs in Case No. 15-50148 ("1st Amended Schedules and Statement of Financial Affairs"). UST 3. On March 18, 2015, Defendant filed his Second Amended Schedules and Statement of Financial Affairs in Case No. 15-50148 ("2nd Amended Schedules and Statement of Financial Affairs"). UST 4. On June 12, 2015, Defendant filed his Third Amended Schedules and Statement of Financial Affairs in Case No. 15-50148 ("3rd Amended Schedules and Statement of Financial Affairs"). UST 5. On July 16, 2015, Defendant filed his Fourth Amended Schedules and Statement of Financial Affairs in Case No. 15-50148 ("4th Amended Schedules and Statement of Financial Affairs"). UST 6. On September 21, 2015, Defendant filed his Fifth Amended Schedules and Statement of Financial Affairs in Case No. 15-50148 ("5th Amended Schedules and Statement of Financial Affairs"). UST 7. On June 12, 2015, the U.S. Trustee commenced

---

[3] "UST" denotes the U.S. Trustee's exhibits.

this adversary proceeding objecting to Defendant's discharge under various provisions of 11 U.S.C. § 727[4] (ECF No. 1).

## JURISDICTION

As an initial matter, the Court finds that it has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding as defined under 28 U.S.C. § 157(b)(2)(J) (objections to discharge). The Court finds venue is proper under 28 U.S.C. § 1408(1). This matter is referred to the Court pursuant to the District's Standing Order on Reference.

## DISCUSSION

Section 727(a) provides that a court must grant a discharge unless one or more grounds for denial of discharge under §§ 727(a)(1)–(12) is proven to exist. The U.S. Trustee alleges that Debtor's discharge should be revoked under §§ 727 (a)(2)(A) for failure to disclose numerous assets; (a)(4)(A) for false schedules, statements of financial affairs, and false testimony; (a)(3) for failure to keep or preserve books and records; and (a)(5) for failure to provide a satisfactory explanation for the loss or deficiency of assets. The burden of proving a denial of discharge under §§ 727(a)(1)–(12) is by a preponderance of the evidence. *Beaubouef v. Beaubouef* (*In re Beaubouef*), 966 F.2d 174, 178 (5th Cir. 1992).

### I.    Arguments of Parties

The U.S. Trustee groups the allegations against Defendant as follows: (1) Transfer of Terra Canyon Property; (2) Sale of Insurance Businesses; (3) Failure to Maintain Books and Records; (4) Undisclosed Cash in Concealed Safe Deposit Box; (5) Lien Against Parents' Property; (6) 2007 Lexus; (7) Concealed Trailer; and (8) Testimony. The Court will address both parties' contentions surrounding these allegations in turn.

---

[4] Unless otherwise provided, all statutory references herein are to 11 U.S.C., *et seq.*

### A. **Transfer of Terra Canyon Property**

In March 2013, Defendant and his spouse Lydia Jean Landin paid $130,224 in cash to purchase vacant land on Terra Canyon (the "Terra Canyon Property"). Joint Pretrial Order at ¶ 16. Defendant paid Diamante Homes $12,500 on a design contract for a home they planned to build on this lot. *Id.* at ¶ 17. From the time Defendant and his spouse purchased the Terra Canyon Property until June 2014, no liens encumbered the property. *Id.* at ¶ 18.

On or about June 23, 2014, Defendant and Lydia Jean Landin transferred the Terra Canyon Property to Landin & Landin, LLC. *Id.* at ¶ 19. Landin & Landin, LLC was formed on June 10, 2014, and is solely owned by Lydia Jean Landin. *Id.* at ¶ 20. Landin & Landin, LLC had no assets and provided no consideration for the transfer. *Id.* In June 2014, Landin & Landin, LLC entered into a real estate lien note for $45,000 with the Terra Canyon Property as collateral (the "Terra Canyon Note"). Defendant and his spouse signed the note as guarantors. *Id.* at ¶ 21.

Defendant testified that the lender on the Terra Canyon Note required the Terra Canyon Property be transferred into an LLC to avoid any claim of homestead. Defendant also testified that only Lydia Jean Landin could be a member of the LLC because Defendant owed back franchise taxes to the State of Texas and was therefore precluded from being a member of Landin & Landin, LLC. This testimony conflicts with Defendant's previous testimony at his May 27, 2015, Rule 2004 Exam. UST 46 at p. 117. When asked why Lydia Jean Landin was the sole owner of Landin & Landin, LLC, Defendant responded "[t]hat's the way we set it up" because we "[w]anted to," and "[j]ust chose to," and when directly asked "Any reason – I mean, any reason?," Defendant responded "Not really." *Id.*

The U.S. Trustee argues that Defendant transferred or concealed the Terra Canyon Property with intent to hinder, delay, or defraud creditors and therefore should be denied his discharge under § 727(a)(2)(A).  Defendant argues that there is no such intent present, as the Terra Canyon Property was only transferred to an LLC at the behest of the lender and Defendant was precluded by the State of Texas from being a member of that LLC.

Additionally, the evidence shows that Landin & Landin, LLC netted $38,497.90 from the loan, after fees were deducted.  UST 22. The proceeds from the Terra Canyon Note were then promptly deposited into the Security Service Federal Credit Union Account that Defendant and Lydia Jean Landin shared (the "Joint SSFCU Account").  UST 8.  Defendant testified that on June 23, 2014, $35,000 was withdrawn from the Joint SSFCU Account and was used to pay Alpine Construction to "finish out the cost" of the construction of a Blimpies Sandwich Shop at Alamo Ranch.

In Defendant's Original Schedules and Statement of Financial Affairs, he listed the transfer of the Terra Canyon Property to Landin & Landin, LLC. UST 2. Defendant stated that the transfer was "to secure a loan of $23,000.  The Debtor used the $23,000 to pay personal living expenses." *Id*. In Defendant's 1st Amended Schedules and Statement of Financial Affairs, he again listed the transfer of the Terra Canyon Property to Landin & Landin, LLC as securing a loan of $23,000.00 and indicated that the $23,000 was used to pay personal living expenses. UST 3.  In Defendant's 3rd Amended Schedules and Statement of Financial Affairs, he again inaccurately listed the Terra Canyon Property transfer as securing a loan for $23,000 and that the $23,000 was used for personal expenses.  *Id*.  Defendant, under penalty of perjury, listed the loan proceeds as more than $15,000 less than what Landin & Landin, LLC actually received from the loan on through several amendments.

6

At the February § 341 Meeting of Creditors, Defendant stated that he recieved $23,000 from the equity loan secured by Terra Canyon Note and that he "had to borrow some money to meet my obligations." UST 45 at pp. 9–10. Then at the March § 341 Meeting of Creditors, Defendant again was asked how much he borrowed against the property and again stated it was approximately $23,000. UST 45 at p. 54. He also testified that the proceeds from the Terra Canyon Note were used to pay bills and were "used to live on back then." UST 45 at pp. 55, 58. During the May 27, 2015, Rule 2004 Examination, Defendant testified that the Terra Canyon Note proceeds were to "salvage building [the Blimpies store]." UST 46 at p. 118.

The U.S. Trustee argues that the continued inaccuracies on sworn pleadings and testimony concerning the proceeds derived from the Terra Canyon Note and the use of those funds constitute false statements under § 727(a)(4)(A). Defendant argues that these inaccuracies were the result of mere confusion and inadvertence.

### B.  Sale of Insurance Agency

Defendant sold his Allstate Insurance Agency to Jesse Fernandez, Jr. for $35,000 on December 31, 2013. Joint Pretrial Order at ¶ 23; UST 30. That transaction took place within two years of the filing of Defendant's bankruptcy case. Joint Pretrial Order at ¶ 24. Defendant did not list this transfer or the income from the transfer on his Statements of Financial Affairs filed in this bankruptcy case on February 9, 2015 and March 18, 2015. *Id.* at ¶ 25. On June 12, 2015, Defendant amended his Statement of Financial Affairs to include this transfer. *Id.* at ¶ 26.

The U.S. Trustee argues that Defendant did not list the transfer of his Allstate Insurance Agency on the Statement of Financial Affairs nor did he list the income from the sale on either Statement of Financial Affairs Question No. 1 or 2, in violation of § 727(a)(4)(A). Defendant acknowledged that the sale of the insurance business should have been disclosed; however,

Defendant testified that he was mistaken as to the date the sale occurred; specifically he believed it was outside of the applicable two year period. Defendant also argued that the income from the sale of the Allstate Insurance Agency was disclosed as part of his income for 2013.

### C. Safe Deposit Box

Question No. 12 on the Statement of Financial Affairs requires debtors to list any safe deposit box in which the debtor had securities, cash, or other valuables within one year immediately preceding the commencement of the case. Joint Pretrial Order at ¶ 27. Defendant marked "none" on his Statement of Financial Affairs. *Id.* at ¶ 28. Defendant twice testified that he did not have a safe deposit box. *Id.* at ¶ 29. Defendant, however, maintained a safe deposit box at Security Service Federal Credit Union. *Id.* at ¶ 30. When shown evidence that he still had a safe deposit box, Defendant testified that the box contained nothing valuable. *Id.* at ¶ 31. The safe deposit box contained $3,000 in cash. *Id.* at ¶ 32.

On the March 26, 2016, § 341 Meeting of Creditors, Defendant was questioned about whether he had a safe deposit box in the last two years. UST 45 at p. 32. Defendant responded that he did not and when asked why he was charged by Security Service Federal Credit Union for the safe deposit box in 2014, Defendant stated that it was for his failure to turn the key back in. *Id.* at pp. 32–33. In June 2015, the U.S Trustee, with Defendant and counsel, discovered that Defendant did have a safe deposit box at Security Service Federal Credit Union. The safe deposit box contained $3,000 in cash. UST 40.

The U.S. Trustee argues that Defendant did not list his safe deposit box on the Statement of Financial Affairs and did not list the $3,000 he had in the safe deposit box on his Schedule B, both in violation of § 727(a)(4)(A). Defendant argues that the omission of the safe deposit box

was based on his sincerely held belief that he no longer had it, and he only learned of the safe deposit box from the June visit with the U.S Trustee.

### D.  The Pioneer Property in Corpus Christi

Defendant testified that he provided over $79,000 to assist his parents in purchasing a home in Corpus Christi, Texas. Joint Pretrial Order at ¶ 33.  Defendant obtained a note and lien on the property for $79,507.43 (the "Pioneer Lien"). *Id.*  In September 2011, the divorce decree between Defendant and his ex-spouse (the "Divorce Decree") awarded ownership of the Pioneer Lien to Defendant. *Id.* at ¶ 34. The lien remains on record against the property. *Id.* Defendant did not list the note and lien as an asset on any of his bankruptcy schedules. *Id.* at ¶ 35.  Defendant listed the Pioneer Lien as his property in his premarital agreement with Lydia Jean Landin signed in August 2012 (the "Premarital Agreement"). *Id.* at ¶ 36.  Defendant included the Pioneer Lien as an asset on loan documents he prepared for the loan on the Terra Canyon Property. *Id.* at ¶ 37. Defendant, who has been in the tax preparation business for years, never issued a Form 1099-C, Cancellation of Debt, to his parents. *Id.* at ¶ 38.

The U.S. Trustee argues that Defendant did not list the Pioneer Lien he owned against his parent's property in Corpus Christi, Texas in violation of § 727(a)(4)(A). Defendant testified that he forgave the debt his parents owed him that was secured by the Pioneer Lien, and therefore, Defendant did not need to disclose it.

### E.  Failure to Maintain Books and Records

In 2013, Defendant received deposits of more than $1.4 million dollars from H&R Block. Joint Pretrial Order at ¶ 39.  In 2014, Defendant received deposits of more than $800,000 dollars from H&R Block. *Id.* at ¶ 40.  Defendant did not maintain separate business bank accounts. *Id.* at ¶ 41.  Instead, Defendant used personal accounts for all his transactions. *Id.* For example, his

Security Service Federal Credit Union checking account shows transactions for his tax services business, his insurance business, his Blimpie sandwich store, and his personal expenses. *Id.* at ¶ 41.

The U.S Trustee argues that Defendant did not keep adequate books and records for his multiple businesses. Instead, Defendant made deposits and withdrawals from bank accounts, using the same bank account for multiple businesses and his personal affairs, in violation of § 727(a)(3). Defendant maintains that kept and turned over numerous source documents, including deposits; cancelled checks; and bank statements. Defendant contends that such documents are sufficient to meet the requirements of § 727(a)(3).

### F. **The Trailer**

Defendant did not schedule ownership of a trailer on his original schedules. Joint Pretrial Order at ¶ 42. Defendant owns a trailer. *Id.* at ¶ 43. When asked whether he owned a trailer at his February 19, 2015, § 341 Meeting of Creditors, Defendant admitted that he did. *Id.* at ¶ 44. Defendant has now amended the schedules to show ownership of the trailer. *Id.* at ¶ 45.

The U.S. Trustee argues that Defendant omitted the trailer from his schedules in violation of § 727(a)(4)(A). Defendant testified that he forgot about the trailer because it was stored at his son's home.

### G. **2007 Lexus**

Defendant acknowledged that his name was on the title of a 2007 Lexus, along with his adult daughter. Defendant also acknowledged that he obtained a title loan on the 2007 Lexus in February 2014. Defendant testified that, although he obtained the loan, it was solely for the benefit of his adult daughter. Defendant has consistently maintained that the 2007 Lexus was owned solely by his adult daughter.

The U.S. Trustee argues that Defendant did not list the transfer of a 2007 Lexus during the year before filing in violation of § 727(a)(4)(A). Defendant contends that, although he co-signed for the 2007 Lexus with his daughter, the 2007 Lexus was at all times his daughter's vehicle.

### H.  Testimony

When Defendant was asked why he received $100,000 from his brother, Aldo Landin, in January 2013(the "Aldo Landin Loan"), he testified that he needed the money to pay his ex-wife $200,000 under their Divorce Decree.  Joint Pretrial Order at ¶ 46. Defendant did not use the money to pay his ex-wife.  *Id.* at ¶ 47.

The U.S. Trustee argues that Defendant's testimony concerning the Aldo Landin Loan was false. Additionally, the U.S. Trustee argues that Defendant has testified falsely throughout his bankruptcy case, in his testimony at his meetings of creditors, his examination under Rule 2004, and his deposition.  Additionally, as contained within the U.S. Trustee's other allegations, the U.S. Trustee argues that Defendant's Schedules and Statements of Financial Affairs and the various amendments thereto contain numerous false oaths. As such, the U.S. Trustee argues that Defendant should be denied his discharge under § 727(a)(4)(A).

### II.     The Court's Findings

After evaluating the arguments of both the U.S. Trustee and Defendant; evidence admitted at trial; and the testimony of witnesses, the Court finds as follows:

### A.  Defendant's discharge is not denied pursuant to section 727(a)(2)(A).

Congress intended § 727(a)(2) to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets.  To sustain an objection under § 727(a)(2)(A), the proof must show: " (1) a transfer [or concealment] of property; (2)

11

belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." ***Pavy v. Chastant (In re Chastant),*** 873 F.2d 89, 90 (5th Cir. 1989). The parties agree on the first three elements: that Defendant and Lydia Jean Landin transferred the Terra Canyon Property to Landin & Landin, LLC on June 23, 2014, which is within one year of the filing date, January 14, 2015. Joint Pretrial Order at ¶ 19. Thus, the only dispute between the parties is whether Defendant effectuated the transfer with the intent to hinder, delay, or defraud a creditor or officer of the estate.

The Fifth Circuit has identified the following factors that may provide evidence of actual intent to defraud: (i) a lack or inadequacy of consideration, (ii) a familial or close relationship between the parties, (iii) retention of possession, benefit, or use of the property in question, (iv) the financial condition of the party sought to be charged both before and after the transaction in question, (v) the existence or cumulative effect of a pattern or course of conduct after the incurring of a debt, onset of financial difficulties or threat of suits by creditors, and (vi) the general chronology of the events and transactions at issue. ***Chastant***, 873 F.2d at 91. Here, the parties agree that there was no consideration for the transfer; the Terra Canyon Property was transferred to an LLC wholly owned by Defendant's wife; and that Defendant has retained possession and use of the Terra Canyon Property. Joint Pretrial Order at ¶ 20. Like in ***Chastant***, this gratuitous transfer to a family member raises the presumption of an intent to defraud and shifts the burden to Defendant to demonstrate a lack of fraudulent intent. ***Id.*** (citing ***In re Butler***, 38 B.R. 884, 888 (Bankr. D. Kan. 1984)).

Nonetheless, the Court finds that Defendant has rebutted this presumption. Defendant testified that the lender required the Terra Canyon Property to be transferred into an LLC in order to protect the lender from any claim of homestead protections. The Court finds this

explanation credible. Further, in Defendant's Original Schedules and Statement of Financial Affairs, he listed the transfer of the Terra Canyon Property to Landin & Landin, LLC. UST 2. Although the amount and later use of the funds were misstated, Defendant did not attempt conceal the transfer itself.

As to why only Lydia Jean Landin was included as a member of Landin & Landin, LLC, the Court finds Defendant's testimony inconsistent. Nonetheless, such inconsistencies do not alter the finding that Defendant did not transfer the Terra Canyon Property with intent to hinder, delay, or defraud a creditor or officer of the estate. Rather, such inconsistencies are better addressed within the context of § 727(a)(4)(A).

Even if a transfer of property occurs within one year before bankruptcy, discharge may nonetheless be granted if the transfer was made without the intent to frustrate creditors. *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 552 (5th Cir. 1987). The Court finds that Defendant did not transfer the Terra Canyon Property with intent to frustrate creditors. As such, the Court finds that Defendant's discharge should not be denied under § 727(a)(2)(A).

**B. Defendant's discharge is denied pursuant to section 727(a)(4)(A).**

It is the plaintiff who has the burden of proving an objection to discharge under § 727(a)(4)(A). *Beaubouef*, 966 F.2d at 178. "The elements of an objection to discharge under § 727(a)(4)(A) must be proven by a preponderance of the evidence." *Id.* Those elements are: "'(1) [the debtor] made a statement under oath; (2) the statement was false; (3) [the debtor] knew the statement was false; (4) [the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.'" *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005) (quoting *Beaubouef*, 966 F.2d at 178). "An omission of an asset can constitute a false oath." *Pratt*, 411 F.3d at 566.

A debtor need not have acted deliberately to deceive, however. *Beaubouef*, 966 F.2d at 178 ("It makes no difference that [the debtor] does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them.") (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (*per curiam*)). The requisite intent can be shown by establishing that the debtor acted with reckless disregard for the truth, which can be proven by circumstantial evidence. *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001).

    i.    **Defendant made statements under oath that were false.**

The U.S Trustee argues that Defendant made false oaths concerning the purpose of the Aldo Landin Loan to Defendant. There is insufficient evidence concerning the purpose of the Aldo Landin Loan to determine if Defendant's statements were false at the time they were made. The U.S. Trustee, however, also argues that Defendant has made false statements concerning the Terra Canyon Property; the sale of the Allstate Insurance Agency; the safe deposit box; the Pioneer Note; the trailer; and the 2007 Lexus. It is evident to the Court that Defendant's statements concerning these matters were made under oath and were false.

Defendant inconsistently testified as to why Lydia Jean Landin was the sole owner of Landin & Landin, LLC. UST 46 at p. 117. Defendant continually failed to accurately disclose the amount of proceeds derived from the Terra Canyon Note. Defendant submitted sworn schedules multiple times incorrectly listing the amount received from the Terra Canyon Note as $23,000. UST 2, 3, & 5.

Defendant wholly omitted the sale of his Allstate Insurance Agency for $35,000 on his Original Schedules. UST 2. He also omitted the transfer on his 1st Amended Schedules and Statement of Financial Affairs filed on March 9, 2015. UST 3. Defendant disclosed the sale of

the Allstate Insurance Agency on his 3rd Amended Schedules and Statement of Financial Affairs. UST 5.

Defendant also omitted a safe deposit box he maintained at Security Service Federal Credit Union.  Joint Pretrial Order at ¶¶ 28, 29. Defendant did not disclose this safe deposit box until after Defendant, counsel, and the U.S. Trustee visited the Security Service Federal Credit Union in June 2014.

Defendant omitted the Pioneer Lien.  Defendant testified that he omitted the Pioneer Lien because he had forgiven the debt. Even so, Defendant also admitted that the Pioneer Lien was listed on loan documents for the Terra Canyon Property and in his Premarital Agreement, both of which were executed after Defendant asserts he forgave the debt.  Joint Pretrial Order at ¶¶ 36, 37.   Defendant also omitted a trailer on his original schedules and only after he was questioned about the existence of the trailer did he amend his schedules to disclose ownership of the trailer. Joint Pretrial Order at ¶¶ 44, 45.  Defendant also omitted the transfer of a 2007 Lexus, which despite his contentions, should have been disclosed.

> **ii.     Defendant knew the statements were false.**

The Court finds that although Defendant's Statement of Financial Affairs and Schedules were false as to Terra Canyon Property, the safe deposit box, the trailer, and the 2007 Lexus, Defendant did not know these statements were false at the time they were made. The Court found Defendant's testimony on these points credible and not contradicted by his previous testimony.  Nonetheless, Defendant's testimony as to why Lydia Jean Landin was the sole owner of Landin & Landin, LLC; the Allstate Insurance Agency sale; and the Pioneer Lien was not credible.

Defendant's testimony at trial as to why Lydia Jean Landin was the sole owner of Landin & Landin, LLC is plainly inconsistent with his previous testimony at his Rule 2004 examination. At his Rule 2004 examination, Defendant stated, under oath, that there was no reason why Lydia Jean Landin was the sole owner of Landin & Landin, LLC. Yet, when Defendant testified at trial, he stated Lydia Jean Landin was the sole owner of Landin & Landin, LLC because Defendant was precluded from being a member because he owed back franchise taxes to the State of Texas. It is clear from the record that Defendant either falsely testified at his Rule 2004 examination or at the trial, and at both times, Defendant would have known that his statement was false.

As to the sale of the Allstate Insurance Agency, Defendant testified that he was mistaken as to the date of the sale and believed the sale was outside of the requisite time period for disclosure. This sale, however, was well within the applicable period for disclosure. The sale of the insurance agency occurred approximately thirteen months before Defendant filed his bankruptcy case on January 14, 2015. Defendant would have had to have been mistaken as to the date of sale by more than nine months. This is particularly implausible given the significance of the transfer—the sale of Defendant's business from which he derived $35,000.

Concerning the Pioneer Lien, Defendant testified that he omitted the lien because he had forgiven the debt, yet Defendant listed the Pioneer Lien on loan documents for the Terra Canyon Property and in his Premarital Agreement, both of which were executed after Defendant asserts he forgave the debt. Joint Pretrial Order at ¶¶ 36, 37. The Court finds that while Defendant may not have intended to actually collect on the Pioneer Lien; he nonetheless had not cancelled the debt, as he continued to use its existence for his own benefit. Thus, Defendant made false

statements, under oath, which Defendant knew were false as to Landin & Landin, LLC; the sale of Allstate Insurance Agency; and the Pioneer Lien.

### iii. Defendant made these false statements with a reckless disregard for the truth.

While Defendant argues that the statements were not made with fraudulent intent, a debtor need not have acted deliberately to deceive. *Beaubouef*, 966 F.2d at 178.  The existence of more than one falsehood, together with Defendant's failure to take advantage of the opportunity to clear up all inconsistencies and omissions in amended schedules, constitute a reckless indifference to the truth. *Beaubouef*, 966 F.2d at 178 (citing *In re Sanders*, 128 B.R. 963, 972 (Bankr. W.D. La. 1991)).

### iv. The false statements related materially to the bankruptcy case.

Finally, each of the false statements related materially to the bankruptcy case. The materiality of an omission is not solely based on the value of the item omitted or whether it was detrimental to creditors. *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009).  Rather, the statement need only "bear … a relationship to the bankrupt's business transactions or estate, or concern … the discovery of assets, business dealings, or the existence and disposition of his property." *Id*. Landin & Landin, LLC; the sale of the Allstate Insurance Agency; and the Pioneer Lien each bear a relationship to the existence and disposition of Defendant's property.  As such, Defendant's false statements concerning each relate materially to the bankruptcy case.

Because the U.S. Trustee has shown that these statements were made by Defendant under oath; were false; Defendant knew the statements were false; Defendant made the statements with a reckless disregard for the truth; and the statements related materially to the bankruptcy case, Defendant's discharge is denied pursuant to § 727(a)(4)(A).

17

### C. **Defendant's discharge is denied under section 727(a)(3).**

Under § 727(a)(3), a plaintiff must prove that a debtor: (1) failed to keep and preserve financial records; and (2) that this failure prevented the plaintiff from ascertaining the debtor's financial condition. ***Robertson v. Dennis (In re Dennis)***, 330 F.3d 696, 703 (5th Cir. 2003). Once a plaintiff establishes a prima facie case, the defendant has the burden of establishing that his failure to keep adequate records was justified under all circumstances of the case. ***Atofina Petrochemicals, Inc. v. Lee*** (***In re Lee***), 309 B.R. 468, 477–78 (Bankr. W.D. Tex. 2004).

A debtor's financial records need not contain "full detail," but "there should be written evidence" of the debtor's financial condition. ***Goff v. Russell Co. (In re Goff)***, 495 F.2d 199, 201 (5th Cir. 1974). Here, Defendant operated multiple businesses through the same bank account and also used this same bank account to pay his personal expenses. Defendant did not keep a general ledger for his businesses but instead used source documents—such as deposits; cancelled checks; and bank statements. This is analogous to the facts of the Seventh Circuit's case ***Matter of Juzwiak***, 89 F.3d 424 (7th Cir. 1996). In ***Juzwiak***, the defendant owned a business and furnished checking account ledgers, canceled checks, bank statements, and an income tax return to the trustee. ***Id***. at 428. The Seventh Circuit Court of Appeals found that these source documents did not enable a trustee to reconstruct defendant's financial dealings for any period of time with any degree of completeness or accuracy because there is no disclosure of the source of funds nor any substation of expenses. ***Id***. Further in ***Juzwiak***, the Court of Appeals bolstered its finding by noting that the defendant "occasionally paid personal expenses out of the business account." ***Id***.

In this matter, Defendant acknowledges that he used one account to run his numerous businesses through and to pay his personal expenses. Like the defendant in ***Juzwiak***, Defendant

"furnished a lot of paper to [the trustee] and the Court; however, the disorder and nature of the records did not allow meaningful reconstruction of defendant's business transactions." ***Id***. Therefore, the U.S. Trustee has proven that Defendant failed to keep and preserve financial records and that this failure prevented the U.S. Trustee from ascertaining the Defendant's financial condition.

To rebut this presumption, Defendant avers that the documents he turned over—which included deposits; cancelled checks; and bank statements—should have been sufficient for the U.S. Trustee to ascertain Defendant's financial condition. It is important to note that the adequacy of a debtor's records is determined on a case by case basis, using such considerations as the "debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice." ***Duncan***, 562 F.3d at 697 (citing ***Pher Partners v. Womble (In re Womble)***, 289 B.R. 836, 856 (Bankr. N.D. Tex. 2003)). Here, none of the circumstances of Defendant's case mitigate towards finding the lack of recordkeeping is justified. Defendant is a sophisticated businessman with extensive experience in tax preparation and thus, the significance of recordkeeping. Yet, Defendant operated all of his businesses through a single bank account and failed to keep any ledgers. The Court finds that the inadequacy of recordkeeping is not justified under the circumstances. As such, Defendant's discharge is denied under § 727(a)(3).

### D. <u>Defendant's discharge is denied under section 727(a)(5).</u>

Section 727(a)(5) provides that a debtor will be denied a discharge where the debtor fails to explain satisfactorily the loss of assets or deficiency of assets to meet the debtor's liabilities. Section 727(a)(5) does not require specific allegations of fraud but does require that the plaintiff

identify which assets have been lost. *See Nof v. Gannon (In re Gannon)*, 173 B.R. 313 (Bankr. S.D.N.Y. 1994) (denial of discharge warranted on fraudulent withholding of information).

The initial burden is on plaintiffs to show some evidence that assets have been lost and then shifts to the debtor to explain what happened to the assets. *See Chalik*, 748 F.2d at 619 (11th Cir. 1984) (*per curiam*) (denial of discharge warranted for failure to explain loan of $130,000 to debtor). The burden on the debtor is to explain satisfactorily what has happened because the debtor has access to the operative facts. *Poolquip-McNeme, Inc. v. Hubbard (In re Hubbard)*, 96 B.R. 739, 742 (Bankr. W.D. Tex. 1989).

Here, the U.S Trustee asserts that Defendant has failed to explain what happened to more than $2.7 million in payments Defendant received from H&R Block from 2012 to 2014. There is no dispute that Defendant received over two million in payments from H&R Block. Joint Pretrial Order at ¶ 13. Yet when Defendant filed his chapter 7 bankruptcy case in January 2015, his assets only totaled a little over $100,000. UST 2. Thus, the U.S. Trustee has furnished evidence that assets have been lost.

Defendant testified that he was spending lavishly and "living large" after he entered the FLA with H&R Block. While this explanation is plausible, Defendant has not provided the Court or the U.S. Trustee with satisfactory documentary proof of the loss of the assets or credible testimony that explains the disposition of these assets. As the Fifth Circuit has instructed, such general explanations, without documentation, are not satisfactory. *See First Tex. Sav. Ass'n, Inc. v. Reed (In re Reed)*, 700 F.2d 986, 993 (5th Cir.1983) (concluding that an explanation that funds were expended on undocumented expenses and gambling debts was unsatisfactory). Because Defendant has failed to explain satisfactorily the loss of assets or deficiency of assets to meet the debtor's liabilities, Defendant's discharge is denied under § 727(a)(5).

### CONCLUSION

For the reasons stated herein, Plaintiff Judy A. Robbins the United States Trustee for Region 7, which includes the Western District of Texas's Complaint Objecting to the Discharge of Felix Landin, IV (ECF No. 1) is GRANTED, in part, and Defendant is denied a discharge under §§ 727(a)(4), 727(a)(3), and 727 (a)(5).

# # #